WRIGHT, Retired Appellate Judge.
Littleton H. Eubanks filed a complaint in the Mobile County Circuit Court against International Paper Company, seeking workers’ compensation benefits. Eubanks alleged that in February 1994, while working in the line and scope of his employment, he injured his left shoulder, his neck, and his back. Following oral proceedings, the trial court entered a judgment, finding that Eubanks had not suffered a permanent disability as a result of his injury. Eubanks filed a motion to amend the judgment, requesting that the trial court correct certain statements of fact. The trial court granted Eubanks’s motion *393 and entered an amended judgment, which again found that Eubanks had not proven that he had sustained any permanent disability as a result of his injury.
Eubanks appeals, contending that the trial court failed to make sufficient findings of fact and conclusions of law; that his February 1994 accident and injury aggravated, accelerated, or combined with a pre-existing back injury to render him permanently and totally disabled; and that the trial court’s finding— that he did not suffer any permanent disability — is not supported by substantial evidence. With regard to Eubanks’s first contention, the trial court made detailed findings of fact and conclusions of law; therefore, we conclude that the trial court complied with the requirements of § 25-5-88, Ala.Code 1975, and that Eubanks’s contention is without merit.
The standard of review of a workers’ compensation case was stated by our supreme court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996):
“[W]e will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
680 So.2d at 268-69 (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)). See also § 25-5-81(e), Ala.Code 1975.
The Workers’ Compensation Act is to be liberally construed in order to effectuate the beneficent purposes of the Act. Yates v. United States Fidelity & Guaranty Ins. Co., 670 So.2d 908 (Ala.1995). It is not limited to those in perfect health. Ex parte Lewis, 469 So.2d 599 (Ala.1985). If the employment aggravates, accelerates, or combines with a latent disease or infirmity to produce disability, the pre-existing disability does not disqualify the employee’s claim under the “proximate cause” requirement of the Act. Godbold v. Saulsberry, 671 So.2d 80 (Ala.Civ.App.1994). If the employee was able to perform his duties prior to the injury, no pre-existing condition is present for the beneficent purposes of the Act. Id.
The record reveals the following pertinent facts: Eubanks, who was approximately 60 years old when the ease was tried, had obtained a GED while in the Army and had also taken some college courses while in the Army. After an honorable discharge from the Army, Eubanks worked in the industrial construction field, until 1984, when he suffered a back injury — a herniated disc — in the course of his employment. Eubanks was unable to return to his former employment. After attending college for approximately three years, Eubanks obtained a degree in chemical technology. He worked as a chemical technician for International Paper for approximately six years, from 1988 to 1994. Eubanks’s last position at International Paper involved the testing of pulp, diapers, and super-absorbency products.
Between 1988 and 1994 Eubanks sustained a hernia that required surgery, an injury when a “digester blew out” a gasket and struck his face shield, and he fell on several occasions. Eubanks did not file any workmen’s and/or workers’ compensation claims for those injuries.
Eubanks testified that in February 1994, after he stepped on a milk crate to get his samples off the drying line, the crate “shot out from under” him, causing him to fall. Eubanks stated that as he fell, he hit his elbow on the floor, causing his elbow to “drive up into” his shoulder. Eubanks reported his injury and continued working. He requested to see a doctor; however, he could not get an appointment until March 2, 1994.
Eubanks continued working until October 1994. He stated that in October 1994, he worked 96 hours, “was about dead,” and no longer could work. Eubanks testified that he had been able to work until October 1994 because, he said, he took pain medication and received injections. He used his sick leave and applied for Social Security disability benefits. The Social Security Administration approved Eubanks’s application for disability benefits. In July or August 1995 Eubanks returned to work with the knowledge of the Social Security Administration; however, he was unable to perform his job and resigned *394 in August 1995. Eubanks stated that he has not worked since August 1995.
Eubanks admitted that he had back problems before February 1994 and that he missed one month of work in 1992 because of back problems. He also admitted to a variety of various other health problems. Eu-banks further admitted that he had not looked for a job.
Eubanks initially saw Dr. Thomas Dempsey, an orthopedic surgeon who had treated Eubanks in 1992. Dr. Dempsey testified by deposition that he treated Eubanks in 1992 for neck pain and that in 1994, Eubanks complained of low back pain and shoulder pain. Dr. Dempsey also stated that he did not have a note referring to Eubanks’s having a new injury, but that Eubanks’s low back pain would be consistent with falling off a milk crate. Dr. Dempsey further stated that in 1994, he diagnosed Eubanks with degenerative disc disease, which is arthritis in the back, caused by the aging process. An X-ray of Eubanks’s back showed arthritis and an old compression fracture. Dr. Dempsey prescribed pain medications. Later, Dr. Dempsey performed an MRI of Eubanks’s back, which revealed a bulging disc at L4-5 with “minimum right paracentral disc herniation.” Dr. Dempsey attributed the disc herniation to the aging process. In 1995 Dr. Dempsey noted arthritic changes in Eu-banks’s shoulder and injected steroids into some “trigger points” in the shoulder.
Dr. Dempsey stated that he did not believe Eubanks’s fall caused his continuing problems. Dr. Dempsey also stated that Eu-banks is capable of working, with certain restrictions. Dr. Dempsey would restrict Eubanks from standing, walking, heavy lifting, and repetitive squatting. He also stated that Eubanks is no longer capable of meeting the physical requirements of a lab technician.
Eubanks was next treated by Dr. Walter Perry Dickinson, a family practitioner who is Eubanks’s family doctor. Dr. Dickinson testified by deposition that he had been treating Eubanks since 1985. He testified in great length regarding Eubanks’s back and neck problems before 1994. Dr. Dickinson stated that Eubanks had a “collapsed thoracic vertebra and a herniated disc” at L4-5, low back pain, and osteoarthritis. He further stated that Eubanks’s osteoarthritis accounted for the low back pain, which would “flare up.” Dr. Dickinson treated Eubanks with pain medications, as well as medications for muscle spasms.
Dr. Dickinson testified that Eubanks came to him on May 4, 1994, complaining of severe back problems. Dr. Dickinson continued to treat Eubanks. He stated that at some point in time, Eubanks mentioned a fall at work, but he did not make a notation of that in Eubanks’s records, because it had been some months since the fall. Dr. Dickinson treated Eubanks for chronic low back pain.
Dr. Dickinson testified that in 1993, he and Eubanks discussed whether Eubanks should apply for disability benefits; however, Eu-banks continued working. In October 1994 Dr. Dickinson completed a Social Security form in support of Eubanks’s application for disability benefits. Dr. Dickinson reported to the Social Security Administration that Eubanks was no longer able to work because of his chronic low back pain secondary to lumbar disc disease at L4-5, degenerative arthritis of the cervical spine, and peptic ulcer disease. At that time, Dr. Dickinson did not relate Eubanks’s inability to work to his fall at work; however, he changed his mind about Eubanks’s disability being related to his fall. He testified that Eubanks’s fall could have exacerbated or aggravated his chronic osteoarthritis, that Eubanks had an acceleration of his pain and discomfort and increased symptoms in 1994, and that before his fall Eubanks was able to return to work or to his activities after a flare of back pain. Dr. Dickinson further stated that Eubanks is unable to return to work because work aggravates his back problems.
The test for permanent total disability is the inability to find gainful employment. Bidermann Industries Corp. v. Peterson, 655 So.2d 997 (Ala.Civ.App.1994). Total disability does not mean entire physical disability or absolute helplessness. Id. It is the duty of the trial court to make some determination as to the extent of disability. Bider-mann. In making the determination, the trial court must consider all the evidence, *395 including its own observations, and interpret it to its own best judgment. Id.
The trial court is not bound by expert testimony. Malone v. ConAgra Poultry, Inc., 595 So.2d 897 (Ala.Civ.App.1992). “An injured employee’s own subjective complaints of pain are legal evidence which may support a finding of disability.” Jim Walter Resources, Inc. v. Budnick, 619 So.2d 926, 927 (Ala.Civ.App.1993).
Based upon our review of the record, we conclude that the trial court’s finding— that Eubanks did not suffer a permanent disability as a result of his fall in 1994 — is supported by substantial evidence. Accordingly, the judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.