723 So.2d 65 (1998)
Charles CAGLE
v.
BROCK AND BLEVINS, INC.
2961107.
Court of Civil Appeals of Alabama.
January 9, 1998.
Rehearing Denied February 13, 1998.
Certiorari Quashed November 13, 1998.
*66 Robert W. Lee, Jr., Ann Goodner Walthall, and Ashley P. Norton of Robert W. Lee & Associates, P.C., Birmingham, for appellant.
A.A. Ayers of Clark & Scott, P.C., Birmingham, for appellee.
Alabama Supreme Court 1970943.
WRIGHT, Retired Appellate Judge.
Charles Cagle filed a complaint in the Shelby County Circuit Court against Brock and Blevins, Inc., seeking workers' compensation benefits. Following oral proceedings, the trial court entered a judgment, finding that Cagle sustained bilateral inguinal hernias and strained his back, his right hip, and his right knee as a result of an on-the-job injury on January 25, 1993, Cagle's first day of work. The trial court also found that Cagle had a pre-existing condition, that Cagle's accident did not aggravate his pre-existing condition, and that Cagle had refused surgery to correct his hernias. The trial court held that Cagle was not entitled to any permanent partial, temporary total, or permanent total disability benefits and that the employer was liable for Cagle's medical and vocational rehabilitation benefits.
Cagle appeals, contending that the trial court erred in finding that he had a pre-existing condition under the Workers' Compensation Act and that the trial court's judgment is not supported by substantial evidence.
The standard of review in a workers' compensation case was stated by our supreme *67 court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996):
"[W]e will not reverse the trial court's finding of fact if that finding is supported by substantial evidenceif that finding is supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"
680 So.2d at 268-69 (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)). See also § 25-5-81(e), Ala.Code 1975.
The record reveals the following pertinent facts: Cagle, who was 55 years old when the case was tried, completed the 10th grade and has performed manual labor most of his work life. In 1974 Cagle had an intestinal bypass to control his weight; as a result of the surgery, Cagle has tremendous gas pain, difficulty in urinating, constant diarrhea, and anemia.
Cagle worked as a construction "boilermaker" from 1968 until 1990. A construction boilermaker is required to perform "high rigging," climbing, crawling, fabricating steel, and welding. Cagle received his job assignments through a union, which, he said, stopped referring him for jobs because he had sued the union. Cagle did not work from 1990 until January 25, 1993, when the union referred him to the employer. Cagle testified that from 1990 until 1993, he built a house, without any help, and helped his wife with her produce business and flea market activities.
It is undisputed that Cagle injured himself when he tipped a 300-pound "torch buggy" to remove water from its top. The "torch buggy" fell on Cagle's waist and groin, and one of buggy's handles hit his right knee. Cagle testified that he felt "a terrible burning" in his groin, a throbbing pain across his lower back, and a pain in his right knee. He sought medical treatment and was diagnosed with bilateral inguinal hernias. Cagle was also treated for back and right knee strains.
Cagle continued to experience back pain. He testified that the medications and physical therapy prescribed for him aggravated his condition. Cagle also stated that his hips "give way," causing him to fall; that he has difficulty bending or stooping; and that his joints hurt with any movement. He further testified that he cannot return to work as a boilermaker because, he says, he cannot bend, stoop, or lift. Cagle does not believe that he could work 40 hours per week at any job.
On cross-examination, Cagle admitted that he had experienced pain in his back and that he had hurt his knee before January 1993. However, he denied that his back pain affected his ability to work before January 1993. Cagle also admitted that his doctors recommended surgery to repair his hernias, but he chose not to have the surgery. He also stated that he did not have the surgery because the pain medication aggravates his back condition, that he does not need any more pain, and that surgical correction of his hernias will not affect his inability to return to work.
Dr. Rodney Swillie, a neurologist, examined and performed tests on Cagle. He found that Cagle had a genetic predisposition to "spondylosis" and stiffness and soreness as a result of a sprained back. Dr. Swillie opined that Cagle's back sprain should be resolved in 8 to 12 months and that he should be able to return to work at that time, unless his "spondylosis" remained active. On cross-examination, Swillie stated that Cagle's fall could have aggravated or exacerbated his "spondylosis."
Dr. John Michael Grelier, a rheumatologist, performed an independent medical evaluation of Cagle. He opined that Cagle exaggerated his back pain, that Cagle should be at maximum medical improvement, and that there was "a good likelihood that [Cagle] possibly had a polyarthritis arthralgia." Dr. Grelier stated that Cagle's back pain "should not prevent him from returning to work." On cross-examination, Grelier admitted that Cagle's polyarthritis arthralgia is in different parts of his body and not in his back. Dr. Grelier also stated that Cagle's condition should not prevent him from returning to work.
Dr. G. Bryan Dewees III, Cagle's treating rheumatologist, stated that Cagle has spondyloarthritis *68 and osteoarthritis changes in his sacroiliac joints and hips. He also stated that Cagle has decreased flexion of, and tenderness in, his lower back. Dr. Dewees opined that Cagle's 1993 injury aggravated his spondyloarthritis, that Cagle's back pain is permanent, and that Cagle is permanently and totally disabled by his spondyloarthritis.
On cross-examination, Dr. Dewees stated that Cagle's intestinal bypass surgery created a blind loop of intestines and that Cagle may have "reactive arthritis," which is associated with bacterial overgrowth or bacterial infection. Dr. Dewees admitted that he submitted a report to the Social Security Administration, stating that Cagle had probably been permanently and totally disabled since the late 1970s.
The trial court specifically found that Cagle had a pre-existing condition that was not aggravated by his accident. The Workers' Compensation Act is to be liberally construed in order to effectuate the beneficent purposes of the Act. Yates v. United States Fidelity & Guaranty Ins. Co., 670 So.2d 908 (Ala. 1995). It is not limited to those in perfect health. Ex parte Lewis, 469 So.2d 599 (Ala.1985). If the employment aggravates, accelerates, or combines with a latent disease or infirmity to produce disability, the pre-existing disability does not disqualify the employee's claim under the "proximate cause" requirement of the Act. Godbold v. Saulsberry, 671 So.2d 80 (Ala. Civ.App.1994). If the employee was able to perform his duties prior to the injury, no pre-existing condition is present for the beneficent purpose of the Act. Id.
It is undisputed that Cagle had a genetic predisposition to, and that he had, spondyloarthritis before his January 1993 injury. Dr. Dewees stated that Cagle's accident aggravated his condition. Dr. Swillie admitted that the accident could have aggravated or exacerbated Cagle's condition. Cagle performed the duties of his job for 5 hours before the accident. Admittedly, Cagle did not work for three or four years before the accident; however, the record is devoid of any evidence that he was unable to work. He testified that the union did not refer him for jobs and that he spent those years building his house. Cagle admitted he had back pain before the accident, but testified that pain did not prevent him from working.
Based upon our review of the record, we conclude that the trial court's finding, that Cagle had a pre-existing condition for the purposes of the Act, which was not aggravated by his accident, is not supported by substantial evidence.
Accordingly, the judgment of the trial court is reversed and this cause is remanded for the determination of Cagle's disability, if any.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent.
CRAWLEY, Judge, dissenting.
The majority correctly states the standard of review in a workers' compensation case. After reviewing the record, I conclude that there is evidence to support the trial court's finding that Cagle had a preexisting condition that was not aggravated by the accident; therefore, I must respectfully dissent.
The Supreme Court has consistently held that the Court of Civil Appeals is not allowed to reweigh the evidence in a workers' compensation case and that if this court does invade the province of the trial court and reweigh the evidence, then it will reverse this court's judgment. Ex parte Alabama Ins. Guar. Ass'n, 667 So.2d 97 (Ala.1995); Ex parte Veazey, 637 So.2d 1348 (Ala.1993); Ex parte Ellenburg, 627 So.2d 398 (Ala. 1993). The trial court was presented with conflicting evidence as to whether Cagle's accident aggravated a preexisting condition. The trial *69 court resolved the conflicts in the evidence, and its judgment is due to be affirmed.
THOMPSON, J., concurs.